IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiffs,<br><br>vs.<br><br>ALFREDO VENANCIO DOMINGUEZ,<br><br>Defendants. | 4:24CR3087<br><br>**FINDINGS AND RECOMMENDATION** |

This matter is before the Court on Defendant Alfredo Venancio Dominguez's motion to suppress. Filing No. 89. Dominguez seeks to suppress evidence seized by law enforcement from a black sling bag on July 15, 2024. Filing No. 90. He argues the search of this bag violated his Fourth Amendment rights because: (1) there was not probable cause to arrest him and, as such, the search could not have been a search incident to arrest and (2) any search of the bag due to officer safety concerns is without merit. The Court held a hearing on the pending motion on October 1, 2025. Filing No. 122. It ordered a transcript of the hearing and deemed the matter submitted upon receipt of the transcript. A transcript of the proceedings has been filed, Filing No. 131, and the motion is now ripe for disposition.

Additionally before the Court is Defendant's second motion to suppress. Filing No. 128. In this motion, Dominguez seeks to suppress evidence derived or resulting from the use of a GPS tracking device on his vehicle between May 15, 2024 and June 11, 2024. Filing No. 128. Defendant's motion can be decided based

1

on the evidence submitted in conjunction with the motion and will be denied without hearing.[1]

For the reasons discussed below, the undersigned recommends Defendant's motions to suppress be denied.

## STATEMENT OF FACTS

After hearing the testimony of the witnesses and reviewing the exhibits received at the motion to suppress hearing, the undersigned finds the following facts are credible.

In the summer of 2024, officers with the Lincoln Lancaster County Narcotics Task Force ("Narcotics Task Force") were investigating Dominguez's co-defendant Nathaniel Stephenson. Filing No. 131 at 32. As part of that investigation, on May 7, 2024, Investigators Barksdale, Strode, and Masek met with a confidential informant (CI #1) of proven reliability. Filing No. 123, Exhibit 5. CI #1 had conducted two previous controlled substance purchases from two separate individuals. CI #1 identified Stephenson as a large source for methamphetamine. At Investigator Masek's direction, CI #1 contacted Stephenson via Facebook Messenger. Stephenson agreed to sell the CI methamphetamine. Filing No. 123, Exhibit 5.

Also on May 7, 2024, Investigators with the Narcotics Task Force were conducting surveillance on Stephenson's known residence. During this surveillance, investigators observed a cream Cadillac CTS with no license plates arrive and park in a parking lot to the north of Stephenson's residence.

---

[1] Defendant's motion does not request a hearing and the government argues against holding a hearing. Additionally, the Court finds an evidentiary hearing is not necessary given the issues raised are limited and the evidence submitted is sufficient to determine that suppression is improper. *See* United *States v. Gjergji*, No. 8:24CR109, 2025 WL 2306509, at *1 (D. Neb. May 23, 2025), report and recommendation adopted, No. 8:24CR109, 2025 WL 1823112 (D. Neb. July 2, 2025) (discussing the standards for determining whether an evidentiary hearing is required).

2

Investigators were aware that Dominguez owned a cream 2003 Cadillac CTS. Investigators then saw the Cadillac leave the parking lot and drive to a Walgreens where Investigators Hyland and Wiarda observed Stephenson exit the front passenger seat of the Cadillac and engage in a hand-to-hand transaction with another individual who was a passenger of a gray Ford Fusion. The driver of the gray Ford Fusion was later contacted and became a confidential informant (CI #2). Filing No. 123, Exhibit 5. CI #2 confirmed that two days prior (on May 7, 2024) he drove to Walgreens where the passenger in his car purchased methamphetamine from an individual that was consistent with the physical description of Stephenson.

After the hand-to-hand transaction, and still on May 7, Investigators Hyland and Wiarda saw Stephenson get back into the front passenger seat of the Cadillac and leave. Filing No. 123, Exhibit 5. The Cadillac drove back to the parking lot north of Stephenson's residence. Investigators observed Stephenson exit the vehicle and walk towards his residence. A short time later, investigators saw Stephenson walking back to the Cadillac from the direction of his residence and return to the front passenger side of the Cadillac. The Cadillac then drove to a Burger King where investigators observed an unknown male exit the Burger King and enter the back driver's side seat of the Cadillac. The same male subsequently exited the Cadillac and went back to the Burger King. While at the Burger King, Investigators were able to positively identify Dominguez as the driver of the Cadillac. Filing No. 123, Exhibit 5.

Under law enforcement supervision, CI #1 performed a controlled purchase from Stephenson while still at the Burger King. Filing No. 123, Exhibit 5. Investigators Wiarda and Hyland observed CI #1 get into Dominguez's vehicle, the cream Cadillac, and return with methamphetamine he had purchased with controlled buy money. CI #1 confirmed Stephenson provided the methamphetamine and Dominguez was driving the Cadillac. The substance

pretested positive for the presence of amphetamine/methamphetamine and weighed 57.1 grams. Filing No. 123, Exhibit 5.

Law enforcement conducted another controlled purchase of methamphetamine from Stephenson on May 9, 2024. Shortly before this controlled purchase Dominguez's vehicle was again seen at Stephenson's residence. Officers observed the controlled purchase between CI#1 and Stephenson at Casey's General Store in a vehicle other than Dominguez's. While the purchase did not occur in Dominguez's car, CI #1 confirmed Dominguez was in the passenger seat of the vehicle during the purchase of methamphetamine. Filing No. 123, Exhibit 5.

On June 17, 2024, Narcotics Task Force officers were conducting surveillance on Stephenson's residence and observed Dominguez outside the house in or around his Cadillac. Filing No. 131 at 36. Investigators observed another car arrive at the residence at which time Dominguez engaged in behavior consistent with a drug transaction. *Id.* Specifically, Dominguez and the unknown party who arrived at the house exchanged an unknown item hand-to-hand and the unknown party subsequently left the residence. During this same surveillance, officers observed Stephenson exit the residence and mingle with Dominguez. Later this same day, Stephenson sold narcotics to an undercover officer. *Id.* at 37.

On July 15, 2024, the date of Dominguez's arrest, an undercover officer arranged to purchase methamphetamine from Stephenson at a Pizza Hut. Filing No. 123, Exhibit 5. Stephenson agreed to sell Investigator Denzin ¼ pound of methamphetamine for $1,000. Investigator Masek observed Stephenson and Dominguez arrive at gas pumps located near Russ's Market (west of and connected to the Pizza Hut) and meet with two individuals other than Investigator Denzin. Filing No. 123, Exhibit 5. During this meet-up, Investigator Tenney observed Dominguez wearing a black shoulder bag. When Investigators approached Dominguez and the other individuals, Officer Tenney observed

4

Dominguez remove the bag and place it near the front of the vehicle prior to getting on the ground. Filing No. 123, Exhibit 5.

At the October 1, 2025 hearing, Dominguez testified he was the passenger of a vehicle driven by Stephenson on July 15, 2024 when it arrived at a gas station outside of Russ's Market. Filing No. 131 at 7. Dominguez exited the vehicle with a black sling over his shoulder. *Id.* at 12. Shortly after exiting the vehicle, various unmarked police vehicles pull up to the gas station blocking in Stephenson's car, officers exited their vehicles with weapons drawn and ordered everyone to get on the ground. Filing No. 123, Exhibit 3 (Barksdale BWC); Filing No. 131 at 8. Dominguez testified he immediately recognized the individuals to be police officers. Filing No. 131 at 9. Officers repeatedly yelled at the individuals to "get on the ground," "don't move," "put your hands out," "don't reach." Filing No. 123, Exhibit 3 (Barksdale BWC). Dominguez testified during this time he took the sling bag off his body, extended his arms, and placed the bag on the ground. Filing No. 131 at 10. He further explained he did not want officers to believe he was reaching in the bag and was "not trying to get shot by police." Filing No. 131 at 9-10. Dominguez testified he placed the bag near the front bumper of the car "a safe distance away." Filing No. 131 at 17. He then got on the ground. *Id.*

Though difficult to see from the gas station video footage, Dominguez's testimony is largely corroborated by such footage. Filing No. 123, Exhibit 4 at 3:10-3:50. As law enforcement vehicles approach, Dominguez becomes aware of their presence and can be seen removing something from his person. Filing No. 123, Exhibit 4 at 3:20. While officers are handcuffing the individuals at the scene, a law enforcement officer reaches straight down in front of the vehicle, picks up the bag, and places it on the hood of the vehicle. Filing No. 123, Exhibit 4 at 3:50; Filing No. 123, Exhibit 2 (Eirich BWC) at 2:25. Investigator Masek testified that the bag was within arm's length of both Dominguez and Stephenson at the time the officer moved the bag. Filing No. 131 at 39. The time between officers' arrival on scene

5

and Dominguez laying on the ground is approximately 10 seconds. Filing No. 123, Exhibit 2 (Eirich BWC) at 1:48-1:58.

While on the scene, Officer Tenney indicates that the bag is Dominguez's and states "he threw it when we walked up." Filing No. 123, Exhibit 2 (Tenney BWC) at 3:14. He later states "I'm 99% certain it was Alfredo [Dominguez]" and "I'm pretty sure it was Alfredo [Dominguez] . . . I want to check video first." Filing No. 123, Exhibit 2 (Tenney BWC) at 12:20-12:40. The affidavit authored by Investigator Masek states that Officer Tenney observed Dominguez remove the bag and place it near the front of the vehicle prior to getting on the ground. Filing No. 123, Exhibit 5.

While on the scene, approximately one minute after officers' arrival, Investigator Eirich searched the black sling bag and located a Glock 17 9mm handgun. Filing No. 123, Exhibit 5. Dominguez's ID card, multiple bank cards, two iPhones, and other personal items were also located in the bag. *Id.* Filing No. 123, Exhibit 2 (Eirich BWC) at 2:55-3:30.

After being handcuffed and placed in the back of a police cruiser, Dominguez asked for the contents of his bag, including his IDs and phone. Filing No. 123, Exhibit 3 (Stream 0) at 2:35; Filing No. 131 at 11.

**ANALYSIS**

**1) Motion to Suppress – Filing No. 89**

Defendant argues the evidence obtained through the search of the bag should be suppressed because the search was done without a warrant and there was no applicable exception to the warrant requirement. Specifically, Defendant contends his arrest was not supported by probable cause and, at the time of the search, Dominguez was already in custody with his hands cuffed behind him and laying face down on the pavement. Therefore, he contends, the search could not

6

have been for officer safety, the underlying basis for a search incident to arrest. Filing No. 90 at 3-4.

In contrast, the Government argues Dominguez has no reasonable expectation of privacy in the bag and, thus, there is no Fourth Amendment violation because he abandoned the bag when officers arrived on scene. Filing No. 96 at 8; Filing No. 131 at 3-4, 26-27. They further argue, even if Dominguez did not abandon the bag, exigent circumstances permitted the search, the search was lawful incident to Dominguez's arrest, and the inevitable discovery doctrine applies. Filing No. 96.

### a) Abandonment

A warrantless search of abandoned property does not violate the Fourth Amendment, as any expectation of privacy in the item searched is forfeited upon its abandonment.[2] *United States v. Tugwell*, 125 F.3d 600, 602 (8th Cir. 1997). Whether property has been abandoned "is determined on the basis of the objective facts available to the investigating officers, not on the basis of the owner's subjective intent." *James*, 534 F.3d at 873; *United States v. Nowak*, 825 F.3d 946, 948 (8th Cir. 2016). The Court considers both whether the defendant physically relinquished his property and whether he denied ownership of it. *Nowak*, 825 F.3d at 948; *United States v. Simpson*, 439 F.3d 490, 494 (8th Cir. 2006). A verbal denial of ownership is not necessary for a finding of abandonment and the conclusion is based on the totality of the circumstances. *Nowak, 25 F.3d at 978.*

---

[2] While a defendant seeking the suppression of evidence bears the burden of proving he had a reasonable expectation of privacy, *United States v. Hayes*, 120 F.3d 739, 743 (8th Cir.1997), the Eighth Circuit has indicated that the government bears the burden of establishing property has been abandoned. *U.S. v. James*, 353 F.3d 606, 616 (8th Cir. 2003); *United States v. Voice*, 622 F.3d 870, 877 n. 3 (8th Cir. 2010) (noting the government presented no evidence to support abandonment); *see also*, *United States v. Fife*, 356 F. Supp. 3d 790, 801 (N.D. Iowa 2019); *United States v. Pitts,* 322 F.3d 449, 456 (7th Cir. 2003); *United States v. Denny*, 441 F.3d 1220, 1226 (10th Cir. 2006); *United States v. Cofield*, 272 F.3d 1303, 1306 (11th. Cir. 2001).

7

Here, the Court finds Dominguez did not abandon the bag. While Dominguez removed the bag from his person without being specifically instructed to do so by law enforcement, the placement of the bag and statements from officers do not indicate the bag was abandoned. As to physical relinquishment, Dominguez did not move away from the bag a significant amount as it was still within arm's reach of Dominguez at the time it was placed on the car by officers. This is clearly distinguishable from both cases relied upon by the Government wherein the defendant fled the scene leaving their belongings behind. *See United States v Crumble*, 878 F.3d 656 (8th Cir. 2018); *United States v. Nowak*, 825 F.3d 946 (8th Cir. 2016); *see also United States v. Simpson*, 439 F.3d 490, 494 (8th Cir.2006) (defendant relinquished control and therefore abandoned his expectation of privacy when he discarded a rifle and magazine while being chased by police); *U.S. v. Liu*, 180 F.3d 957 (8th Cir. 1999) (defendant abandoned his luggage when he walked off the train leaving his luggage and subsequently fled police); *United States v. Segars*, 31 F.3d 655, 658 (8th Cir.1994) (defendant abandoned his expectation of privacy when he "dropped [a] package, backed away from the apartment door, and attempted to flee" when officers confronted him in an apartment building); *United States v. Willis*, 967 F.2d 1220, 1223 (8th Cir.1992) (defendant abandoned shopping bag by dropping it in parking lot with police in hot pursuit). Here, Dominguez did not move away from his bag after placing it on the ground nor did he leave the premises or flee police. Under the circumstances, the Court does not find that Dominguez physically relinquished it for the purposes of abandonment.

The Government next argues that Dominguez did not object to the search of the sling bag or make any claim until after he was already aware the gun was found inside. Filing No. 96 at 9. But officers searched the bag while Dominguez was face down on the ground. It is not clear he was even aware the search was taking place. Moreover, the bag was searched approximately one minute after

officers arrived on scene. *See* Filing No. 123, Exhibit 2 (Eirich BWC) at 1:57-3:00. Based on the evidence submitted, there were no statements or acts done by Dominguez prior to the search which would lead officers to believe he was denying ownership of the property.[3]

Further, other evidence is consistent with the bag being placed on the ground rather than thrown or discarded. *See* Filing No. 123, Exhibit 5 at 5 ("Tenney observed Dominguez remove the bag and place it near the front of the vehicle"); Filing No. 123, Exhibit 2 (Eirich BWC) at 2:25 (showing location of the bag); Filing No. 131 at 39 (testimony that bag was within arm's reach). In fact, officers repeatedly attributed the bag to Dominguez and there was no indication they believe Dominguez abandoned it. While Officer Tenney can be heard saying Dominguez "threw" the bag when officers approached, this statement was made after the search of the bag had already begun. Filing No. 123, Exhibit 2 (Tenney BWC) at 2:50-3:20

The objective facts available to officers at the time the bag was searched was that Dominguez placed the bag on the ground within arm's reach when officers approached with their guns drawn. In such circumstances, the Court finds the property was not abandoned for Fourth Amendment purposes.

As the Court finds Dominguez had an expectation of privacy in the bag searched, the Court next considers whether an exception to the warrant requirement applies.

**b) Exceptions to the Fourth Amendment**

Warrantless searches, meaning searches conducted "without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions."

---

[3] Dominguez claimed ownership of the bag after the search when he asked for his items to be returned to him. As the Court considers whether the bag was abandoned at the time of the search, these statements do not impact the Court's decision.

9

*Mincey v. Arizona*, 437 U.S. 385, 390 (1978) (quotation omitted). "In the case of a warrantless search, the government bears the burden of establishing an exception to the warrant requirement." *United States v. Kennedy*, 427 F.3d 1136, 1140 (8th Cir. 2005). Here, the Government argues exigent circumstances permitted the search, the search was lawful incident to Dominguez's arrest, and the inevitable discovery doctrine applies. Because the Court finds the search incident to arrest exception applies, the Court declines to reach the governments other arguments.

### i) Search Incident to Arrest

Among the exceptions to the warrant requirement is a search incident to a lawful arrest. *Arizona v. Gant*, 556 U.S. 332, 337 (2009). Here, Defendant contends this exception is inapplicable for two reasons: (1) there was not probable cause to arrest him on July 15, 2024, and (2) any search of the bag due to officer safety concerns is without merit. The Court addresses both below.

#### (1) Probable Cause

"Probable cause for an arrest exists when the totality of circumstances demonstrates that the arresting officer personally knows or has been reliably informed of sufficient facts to warrant a belief that a crime has been committed and that the person to be arrested committed it." *United States v. Reinholz*, 245 F.3d 765, 778 (8th Cir. 2001). "Because probable cause requires only a probability or substantial chance of criminal activity, rather than an actual showing of criminal activity, the police need not have amassed enough evidence to justify a conviction prior to making a warrantless arrest." *United States v. Webster*, 625 F.3d 439, 442 (8th Cir. 2010); *see also United States v. Winarske*, 715 F.3d 1063, 1067 (8th Cir. 2013).

When determining probable cause, "[l]aw enforcement officers have substantial latitude in interpreting and drawing inferences from factual circumstances." *United States v. Henderson*, 613 F.3d 1177, 1181 (8th Cir. 2010)

(internal quotation omitted). "Because '[p]robable cause is a practical and common-sensical standard,' 'an officer may draw inferences based on his own experience' to determine whether probable cause exists." *Soderman*, 983 F.3d at 375 (alteration in original) (quoting *Murillo-Salgado*, 854 F.3d at 418). Moreover, in determining whether probable cause exists, courts recognize that the police possess specialized law enforcement experience and, thus, may "draw reasonable inferences of criminal activity from circumstances which the general public may find innocuous." *United States v. Caves*, 890 F.2d 87, 94 (8th Cir. 1989) (citation and internal quotations omitted). Accordingly, the Court views the totality of the circumstances in this case through the eyes of the experienced narcotics agents involved in his arrest. *See U.S. v. Payne*, 119 F.3d 637, 643 (8th Cir. 1997).

Dominguez argues investigators did not have probable cause for his arrest because all of the drug transactions witnessed by officers were performed and/or coordinated with Stephenson and not Dominguez. It is true that mere association with a known or suspected criminal, or presence in that person's automobile, does not create probable cause to arrest. *See United States v. Everroad*, 704 F.2d 403, 406 (8th Cir. 1983). But Defendant was not arrested merely because he arrived at a gas station in the car with Stephenson. Rather, investigators had been surveilling Stephenson for multiple months and observed Dominguez and/or his known vehicle to be present or used in furtherance of at least three known drug transactions along with other suspicious conduct. His involvement cannot be described as a "brief association with a suspected criminal" with "no other unlawful or suspicious conduct" involved. *See Everroad*, 704 F.2d at 407.

For example, on May 7, 2024, Narcotics Task Force officers observed a cream Cadillac CTS with no license plates, a car consistent with Dominguez's known vehicle, drive Stephenson to a known narcotics deal. Filing No. 123, Exhibit 5 at 2. Thereafter, NTF officers observed Dominguez's vehicle return Stephenson to his known residence, wait for Stephenson while he enters the house, and then

observed Stephenson return to Dominguez's vehicle. Officers were able to confirm Dominguez was driving his vehicle at this time. Dominguez drove to a nearby Burger King where officers used a confidential informant to conduct a controlled purchase of methamphetamine. This purchase took place in Dominguez's vehicle and the confidential informant confirmed Dominguez was driving. Filing No. 123, Exhibit 5 at 3. On May 9, 2024, officers arranged another methamphetamine deal with Stephenson and a confidential informant. On this day, officers again observed Dominguez's vehicle park at Stephenson's residence, wait for Stephenson to go inside and later return, and then leave the residence with Stephenson. A short time later Stephenson is observed walking to a Casey's General Store where officers again use a confidential informant to conduct a controlled purchase of methamphetamine. While this transaction did not take place in Dominguez's vehicle, the confidential informant identified Dominguez as being the front passenger of the vehicle when he purchased methamphetamine from Stephenson. Filing No. 123, Exhibit 5 at 4. Dominguez and his vehicle were also observed at Stephenson's residence on June 17, 2024, at which time officers observed Dominguez engage in behavior that, based on their training and experience, is consistent with a hand-to-hand drug transaction. Filing No. 131 at 37. Finally, on the date of his arrest, Dominguez arrived with Stephenson at what was planned to be a controlled purchase of methamphetamine. Filing No. 123, Exhibit 5.

     Investigators believed Dominguez had committed or was committing a drug crime, such as conspiracy to distribute and possession with intent to distribute controlled substances, based upon information gathered through confidential informants, independent surveillance, Dominguez's repeated presence and interactions with Stephenson (a confirmed source of methamphetamine), his driving patterns with Stephenson (which included short-term stops where drug transactions were known to have occurred in Dominguez's car and/or in Dominguez's presence), Dominguez's conduct that was consistent with a hand-to-

12

hand drug transaction, and finally, arriving with Stephenson at what was supposed to be a controlled purchase of methamphetamine. Based on the totality of the circumstances, the Court finds there was ample probable cause to arrest Dominguez on July 15, 2024. *See U.S. v. Clark*, 754 F.2d 789 (8th Cir. 1985) (probable cause for a warrantless arrest where Defendant was present in her husband's car at all times before, during, and after a drug purchase and the criminal nature of the transaction was apparent); *U.S. v. Caves*, 890 F.2d 87 (8th Cir. 1989) (probable cause existed where the parties' association was contemporaneous with the time of the criminal activity and the activity could not have been carried out without the defendant's knowledge); *Maryland v. Pringle*, 540 U.S. 366, 373 (2003) (explaining a car passenger will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing making it reasonable to infer a common enterprise among them); *United States v. Segars*, 31 F.3d 655, 659 (8th Cir. 1994) (probable cause for a warrantless arrest existed when suspect arrived when drug courier was expected to arrive); *United States v. Chauncey*, 420 F.3d 864, (8th Cir. 2005) (finding probable cause to arrest occupant of vehicle even though no drugs were found on occupant but drug related activity was indicated within the vehicle); *United States v. Romero*, 2019 WL 6907932 (D.Minn. Dec. 19, 2019) (finding a "common enterprise" between the vehicle's occupants and sufficient evidence of probable cause to support an arrest where defendant was known to law enforcement through large-scale investigation and drove his co-defendant to controlled purchase of methamphetamine).

### (2) Officer Safety

Dominguez next argues the search incident arrest exception to the warrant requirement does not apply because Dominguez was "in custody, face down on the pavement, hands cuffed behind his back, with weapons drawn on him prior to

13

the bag being searched," and there were no concerns for officer safety. Filing No. 90 at 4.

A search incident to arrest may lawfully extend to "the arrestee's person and the area within his immediate control," that is, "the area into which an arrestee might reach in order to grab a weapon or evidentiary items." *Chimel v. California*, 395 U.S. 752, 763 (1969) (internal quotation marks omitted). This exception "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Arizona v. Gant*, 556 U.S. 332, 338 (2009). Despite Dominguez's arguments, a bag being "beyond his reach" or officers restraining him does not automatically render the exception inapplicable. *See U.S. v. Perdoma*, 621 F.3d 745, 750 (2010). Rather, the Eighth Circuit has "rejected the notion that an officer's exclusive control of an item necessarily removes the item from the arrestee's area of immediate control." *Perdoma*, 621 F.3d at 750. Here, at the time the officer placed the bag on the hood of the car, the bag was still within arm's reach of Dominguez. Filing No. 131 at 39. Dominguez and another individual being detained remained within feet of the bag while officers worked to restrain, handcuff, and pat down the suspects. Filing No. 123, Exhibit 2 (Tenney BWC) at 2:10-3:00. Notably, the detention process is still ongoing when an officer searches the bag in question. *Id.*; Filing No. 123, Exhibit 2 (Eirich BWC) at 3:00. At some point prior to the search, an officer observes Dominguez move while on the ground and can be heard yelling at Dominguez "Don't fucking move." Filing No. 123, Exhibit 2 (Eirich BWC) at 2:25. Moreover, Investigator Masek testified that officers had information that both Dominguez and Stephenson were gang members and "known to carry firearms." Filing No. 131 at 51.

Dominguez was within reach of the bag as officers worked to secure the scene. He remained within reach of the bag during the search. Shortly before the search, officers can be heard yelling at Dominguez, and others, to remain still indicating officers did not have control of the scene and there remained a concern

14

for officer safety. Under these circumstances, the bag was within the area of Dominguez's immediate control and officers were justified in searching the bag incident to his arrest. *See Perdoma*, 621 F.3d at 750; *United States v. Morales*, 923 F.2d 621, 626–27 (8th Cir. 1991); *United States v. Mefford*, 658 F.2d 588, 591–93 (8th Cir. 1981); *United States v. Horne*, 4 F.3d 579, 586–87 (8th Cir. 1993); *see also United States v. Collier*, 4:24CR3067 2025 WL 2426744 (D. Neb. August 22, 2025).

In conclusion, Dominguez's bag was searched incident to his lawful arrest and his motion to suppress the evidence found within it should be denied.

**2) Motion to Suppress – Filing No. 128.**

Dominguez next moves to suppress any evidence derived or resulting from use of a GPS tracking device on his vehicle between May 15, 2025 and June 11, 2024. Filing No. 129. Dominguez contends that the affidavit in support of the search warrant, Filing No. 129-1 at 6-12, lacks probable cause making the search unreasonable in violation of the Fourth Amendment. Filing No. 128.

On May 13, 2024, a search warrant was signed and issued by a District Court of Lancaster County, Nebraska judge based on the affidavit of Investigator Brent Masek.[4] Filing No. 129-1. The warrant authorized the installation of a mobile tracking device on Dominguez's Cream 2003 Cadillac CTS VIN:1G6DM57N430133856. Filing No. 129-1. This device was placed on Dominguez's vehicle and recorded data from May 15, 2024 to June 11, 2024. Filing No. 129-1 at 2-3.

---

[4] The affidavits for search warrant for both of Dominguez's motions are signed by Investigator Brent Masek at different points in the investigation. While the wording is not identical, the substance of both affidavits is substantially the same. *Compare* Filing No. 129-1 *with* Filing No. 123, Exhibit 5. The Court only considers Filing No. 129-1 for purposes of Dominguez's second motion to suppress but will not restate the facts contained therein.

15

Placing a GPS device on a vehicle is a Fourth Amendment search "requiring probable cause and a warrant." *United States v. Bradley*, 924 F.3d 476, 480 (8th Cir. 2019). As previously discussed, probable cause exists when, viewing the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Reed*, 921 F.3d 751, 757 (8th Cir. 2019). The court pays "great deference to the probable cause determinations of the issuing judge or magistrate," in deciding "whether the issuing judge had a substantial basis for concluding that probable cause existed." *United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016).

The facts presented to the issuing judge were substantially similar to those considered in the Court's determination that there was probable cause for Defendant's arrest, with the exception of the events that officers observed on June 17, 2024 and those that took place on July 15, 2024. *See supra* section 1(b)(i)(1). And, based on the information provided to the issuing judge, combined with the deference afforded to his findings, the Court finds probable cause existed to support the issuance of the tracking warrant.

The issuing judge was presented with considerable evidence suggesting that Dominguez and his vehicle were involved in criminal activity, including associating with and transporting a known narcotics dealer to confirmed narcotics sales, a controlled purchase of narcotics taking place in Dominguez's vehicle with him present, and another controlled purchase of narcotics taking place while Dominguez was present in a different vehicle. *See* Filing No. 129-1. These facts create a nexus between known drug activity, Dominguez, and Dominguez's vehicle, and the issuing judge had substantial basis for concluding that probable cause existed. *See* cases cited *supra* section 1(b)(i)(1) p. 13; *see also United States v. Sanchez-Gonzalez*, No. 22-CR-143 (KMM/DTS), 2023 WL 5218089 (D. Minn. Aug. 15, 2023) (finding probable cause for tracking warrant of vehicle when

16

Defendant picked up man who sold drugs to undercover officers and drove man to second encounter that was consistent with drug dealing); *United States v. Martinez*, No. CR 22-86 (PJS/BRT), 2022 WL 18051880 at *6-7 (D. Minn. Nov. 16, 2022), report and recommendation adopted, 2022 WL 18011789 (D. Minn. Dec. 30, 2022) (probable cause for tracking warrant where vehicle was used by suspects in a controlled purchase of narcotics). Having found the affidavit contains probable cause, the motion to suppress can be denied on this basis alone.

Moreover, even if the affidavit did not support a finding of probable cause, the evidence is still admissible. Because, as argued by the Government, the *Leon*[5] good-faith exception to the exclusionary rule applies. Under the good-faith exception, evidence seized pursuant to a search warrant issued by a magistrate that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable. *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007). The "good-faith inquiry is confined to the objectively ascertainable question [of] whether a reasonably well-trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir.2006). The rationale for the good-faith exception is that "no justification exists to exclude evidence 'when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.'" *Puckett,* 466 F.3d at 630 (quoting *Leon*, 468 U.S. at 920).

*Leon* identified various situations[6] in which an officer's reliance on a warrant would be unreasonable, including when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence

---

[5] *United States v. Leon*, 468 U.S. 897 (1984).
[6] No party argues the other three circumstances in which the good faith exception is inapplicable are at issue in this motion. Upon review, the Court finds these circumstances are not present and suppression is not required on that basis.

17

entirely unreasonable." *Leon*, 468 U.S. at 923. Dominguez argues that is the case here. *See* Filing No. 128 at 2. But, as already discussed, the affidavit in support of the warrant did include sufficient information to establish probable cause. And even if the evidence in support was open to doubt, it is the judge's responsibility to "determine whether the allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." Ordinarily, an officer "cannot be expected to question the [judge's] probable-cause determination." *Leon*, 468 U.S. at 921. Moreover, even if a different judge would reach a differing conclusion as to probable cause, Investigator Masek's reliance on that affidavit would still be reasonable. *U.S. v. Martin*, 833 F.2d 752, 756 (8th Cir. 1987) ("When judges can look at the same affidavit and come to differing conclusions, a police officer's reliance on that affidavit must, therefore, be reasonable.").

In sum, based on the totality of the circumstances,[7] Investigator Masek's affidavit was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. And because it was objectively reasonable for Investigator Masek to rely in good faith on the warrant, the *Leon* good-faith exception to the exclusionary rule also applies. As such, Dominguez's motion to suppress any evidence derived or resulting from use of a GPS tracking device on his vehicle between May 15, 2024 and June 11, 2024, should be denied.

For the reasons stated above,

---

[7] The Court recognizes that it may consider facts outside of the affidavit when assessing good faith, including information known to the officer but not presented to the issuing judge. *See Anderson v. Creighton*, 483 U.S. 635 (1987); *United States v. Marion*, 238 F.3d 965, 969 (8th Cir.2001). However, neither party requests a hearing in their briefing and, based upon the search warrant at issue, the Court can conclude the good-faith exception applies without looking outside the four corners of the affidavit.

18

IT HEREBY IS RECOMMENDED to the Honorable Susan M. Bazis United States District Judge, that defendant's motions to suppress, Filing Nos. 89 and 128, be denied in their entirety.

The parties are notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

Dated this 24th day of November, 2025.

BY THE COURT:

*s/ Jacqueline M. DeLuca*
United States Magistrate Judge